[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15017
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20272-PAS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN ESTEBAN VILLA CARVAJAL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 10, 2013)

Before CARNES, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Juan Esteban Villa-Carvajal appeals his 51-month sentence, imposed after

he pled guilty to making a false statement in connection with the acquisition of a

firearm. On appeal, Villa-Carvajal argues that: (1) his sentence enhancement for

exporting firearms constitutes impermissible "double counting" when combined with his enhancement for trafficking in firearms; and (2) the district court erred in applying a sentence enhancement for his leadership role. For the reasons set forth below, we affirm Villa-Carvajal's sentence.

I.

In 2012, Villa-Carvajal was charged by information with one count of willfully dealing in firearms without a license in violation of 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D), and 2 (Count One), and seven counts of making false statements in connection with the acquisition of a firearm in violation 18 U.S.C. §§ 922(a)(6) and (2) (Counts Two through Eight). He pled guilty to Count Two of the information. In support of the guilty plea, the government and Villa-Carvajal signed a factual proffer, indicating that, from February 2009 to November 2011, Villa-Carvajal, with the assistance of Wilson Javier Ruiz and Jennifer Rios, secured firearms that were shipped to customers outside the United States. In order to secure the firearms, Villa-Carvajal directed Ruiz and Rios to falsely identify themselves as the buyers of the firearms.

The presentence investigation report ("PSI") noted that, although there was no written plea agreement, the government had agreed to seek dismissal of the remaining counts of the information after sentencing. As to the offense conduct, the PSI stated that Ruiz had informed agents from the Bureau of Alcohol, Tobacco,

2

and Firearms ("ATF") that Villa-Carvajal provided him with money to purchase the firearms, informed him which type of firearms to purchase, and directed him where to purchase the firearms. During the investigation, Ruiz agreed to cooperate with ATF agents, and subsequently, Ruiz introduced Villa-Carvajal to an undercover ATF agent. When Villa-Carvajal met the undercover agent, he negotiated to pay the agent a commission for his work as a straw purchaser of firearms. After Villa-Carvajal was taken into custody, he advised ATF agents that Rios did not know anything and that he manipulated her.

The PSI assigned Villa-Carvajal a base offense level of 12 pursuant to U.S.S.G. § 2K2.1(a)(7). Further, because Villa-Carvajal was responsible for at least 19 firearms, the PSI increased his base offense level by 4 levels pursuant to U.S.S.G. § 2K2.1(b)(1)(B). Additionally, the PSI applied: (1) a four-level enhancement under U.S.S.G. 2K2.1(b)(5) for engaging in the trafficking of firearms; (2) a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(A) for possessing or transferring a firearm with knowledge, intent, or reason to believe that it would be transported outside of the United States; and (3) a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c) for Villa-Carvajal's role as an organizer, leader, or manager in the offense. Finally, Villa-Carvajal received a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a)

3

and (b).  Based on a total offense level of 23 and a criminal history category of II, Villa-Carvajal's guideline range was 51 to 63 months' imprisonment.

Prior to sentencing, Villa-Carvajal objected to the four-level enhancement under § 2K2.1(b)(6)(A) for exporting firearms, arguing that the enhancement constituted "double counting" when combined with the enhancement for trafficking in firearms under § 2K2.1(b)(5).  Additionally, Villa-Carvajal objected to the leadership role enhancement.

At the sentencing hearing, Villa-Carvajal reasserted his double-counting objection, arguing that the exportation offense was the same as the trafficking offense because he only trafficked in firearms for the purpose of exporting them to Colombia.  Ultimately, the district court overruled his objection, explaining,

> [T]he trafficking part is selling them to make a profit on the sale; in other words, engaging in being an arms dealer.  The additional harm here is selling them and exporting them overseas.
>
> We have a significant problem in this country of contributing to the anarchy in other countries because we are improperly [and] illegally exporting weapons overseas, be it to Colombia in this case, or Mexico, and it harms those particular countries.  So not only have we recognized the harm that society does not want of having people that are not licensed arms dealers in the business of buying and selling for their own profit, but we don't want them sold overseas.

Next, as to the leadership role enhancement, the court stated that the two-level aggravating role enhancement was appropriate because Villa-Carvajal made a more significant profit, his offense involved 19 separate purchases, and he

4

recruited others to be straw purchasers.  In response, Villa-Carvajal argued that he

pled guilty to making a false statement in purchasing firearms but, because other

individuals made the false statements for him, his conduct of directing others to

make false statements was already incorporated into his base offense level.

After considering Villa-Carvajal's arguments, the district court overruled his

objection to the leadership role enhancement.  Ultimately, the court adopted the

PSI's guideline calculations and imposed a 51-month sentence.

## II.

We review a district court's application of the Guidelines to the facts *de

novo*.  *United States v. Lamons*, 532 F.3d 1251, 1268 (11th Cir. 2008).  We also

review allegations of impermissible double-counting *de novo*.  *United States v.

Ramirez*, 426 F.3d 1344, 1355 (11th Cir. 2005).

"Impermissible double counting occurs only when one part of the Guidelines

is applied to increase a defendant's punishment on account of a kind of harm that

has already been fully accounted for by application of another part of the

Guidelines."  *United States v. Webb*, 655 F.3d 1380, 1382 (11th Cir.), *cert. denied*,

665 F.3d 1380 (2012) (quoting *United States v. Dudley*, 463 F.3d 1221, 1226-27

(11th Cir. 2006).  In general, double counting is permissible if the Sentencing

Commission intended the result and each guideline section addresses conceptually

separate notions related to sentencing.  *Id.*

Under the Sentencing Guidelines, § 2K2.1(a)(5) provides for a four-level increase to a defendant's base offense level if the defendant engaged in the trafficking of firearms. U.S.S.G. § 2K2.1(b)(5). Further, under § 2K2.1(b)(6)(A), a four-level enhancement applies if a defendant possessed or transferred a firearm with knowledge, intent, or reason to believe that it would be transported out of the United States. U.S.S.G. § 2K2.1(b)(6)(A).

As an initial matter, Villa-Carvajal does not challenge the application of § 2K2.1(b)(5), except insofar as he contends that, coupled with § 2K2.1(b)(6)(A), it constitutes impermissible double-counting.

The district court did not err in applying the sentence enhancement under § 2K2.1(b)(6)(A) based on Villa-Carvajal's conduct of exporting firearms to Colombia because that enhancement did not constitute impermissible double counting when combined with the trafficking enhancement. Specifically, as discussed by the district court, the sentencing enhancements under § 2K2.1(b)(5), and § 2K2.1(b)(6)(A) address two different kinds of harm. The enhancement under § 2K2.1(b)(5) increases a defendant's base offense level for trafficking in firearms regardless of whether the defendant intends to export those firearms to another country. *See* U.S.S.G. § 2K2.1(b)(5). However, the enhancement under § 2K2.1(b)(6)(A) applies when a defendant exports firearms outside of the United States, even if he did not engaging in firearm trafficking. U.S.S.G.

6

§ 2K2.1(b)(6)(A). Thus, the trafficking enhancement did not fully account for the additional harm that Villa-Carvajal intended to illegally transport the firearms outside of the United States. *See Webb*, 655 F.3d at 1382.

On appeal, Villa-Carvajal suggests that he is being punished twice for the same offense because his only purpose for trafficking in firearms was to export the firearms. Under this reasoning, he would receive the same enhancements as a similarly situated defendant who trafficked in firearms without the intention of exporting them outside of the United States. However, § 2K2.1(b)(6)(A) addresses a conceptually separate notion from the trafficking enhancement because it specifically punishes the harm resulting from illegal exportation of firearms. *See id*. Thus, it would not apply to someone who trafficked in firearms but did not intend to export those firearms to another country. For these reasons, the district court did not err in determining that Villa-Carvajal's enhancement for exporting firearms did not constitute impermissible double counting.

### III.

Ordinarily, a defendant's role as an organizer or leader is a factual finding that we review for clear error when determining if the enhancement under § 3B1.1 was applied appropriately. *Ramirez*, 426 F.3d at 1355. However, where a defendant raises a sentencing argument for the first time on appeal, we review only for plain error. *United States v. Aguillard*, 217 F.3d 1319, 1320 (11th Cir. 2000).

To prevail under a plain-error standard, the appellant must show (1) an error that (2) is plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993).

Pursuant to § 3B1.1(c), a district court may increase a defendant's offense level by two levels where the defendant was an organizer, leader, manager, or supervisor in any criminal activity. U.S.S.G. § 3B1.1(c). The government bears the burden of proving by a preponderance of the evidence that the defendant played such a role in the offense. *United States v. Yeager*, 331 F.3d 1216, 1226 (11th Cir. 2003). Further, "a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes." *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006).

In determining the defendant's role in the offense, the district court must consider the following factors:

> (1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others.

*United States v. Jennings*, 599 F.3d 1241, 1253 (11th Cir. 2010); *see* U.S.S.G. § 3B1.1, comment. (n.4). However, it is not required that all these considerations

8

exist in any one case.  *Ramirez*, 426 F.3d at 1356.  Still, "there must be evidence that the defendant exerted some control, influence or decision making authority over another participant in the criminal activity."  *United States v. Martinez*, 584 F.3d 1022, 1026 (11th Cir. 2009).  The defendant need only manage or supervise one other participant for the enhancement to apply.  *See Jennings*, 599 F.3d at 1253; U.S.S.G. § 3B1.1, comment. (n.2) (stating that, for the enhancement to apply, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants).  Under the Guidelines, a "participant" is defined as a "person who is criminally responsible for the commission of the offense, but need not have been convicted."  U.S.S.G. § 3B1.1, comment. (n.1)).

Finally, "[t]he mere status of a middleman . . . does not support enhancement under Section 3B1.1 for being a supervisor, manager, or leader.  Section 3B1.1 requires the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership."  *United States v. Yates*, 990 F.2d 1179, 1182 (11th Cir. 1993) (quotation omitted).  In *Yates*, we determined that the leadership role enhancement did not apply where there was no evidence that the defendant had any control over the drug distribution network and there was no evidence to suggest the existence of any of the specific factors identified by the Sentencing Commission.  *Id.*

As an initial matter, although Villa-Carvajal challenged his leadership role enhancement before the district court, he raises a new argument for the first time on appeal. Specifically, before the district court, Villa-Carvajal argued that the role enhancement should not apply because his conduct of directing Rios and Ruiz to illegally obtain firearms was already accounted for in his base offense level due to the nature of the charges to which he pled guilty. However, on appeal, he argues for the first time that the enhancement should not apply because he was merely a middleman for the purchase and sale of firearms. Thus, we review his argument only for plain error. *See Aguillard*, 217 F.3d at 1320.

Regardless, under either standard of review, the district court did not err in applying the aggravating role enhancement under § 3B1.1(c). During sentencing, Villa-Carvajal confirmed that he did not contest any of the facts represented by the PSI or by the government. Thus, he admitted those facts for sentencing purposes. *See Wade*, 458 F.3d at 1277. The factual proffer and the PSI established that Villa-Carvajal exerted control over at least two other participants in the offense. *See Jennings*, 599 F.3d at 1253; U.S.S.G. § 3B1.1, comment. (n.2). Specifically, Villa-Carvajal recruited Ruiz and Rios to obtain firearms for the purpose of illegally exporting those firearms to Colombia. To the extent that Villa-Carvajal suggests that Ruiz and Rios were not participants in the criminal activity because they were not charged in the offense, his argument is meritless. During sentencing, Villa-

10

Carvajal conceded that Ruiz and Rios were criminally responsible for obtaining the firearms. *See* U.S.S.G. § 3B1.1, comment. (n.1).

Further, the undisputed facts established that Villa-Carvajal directed Ruiz and Rios to falsely identify themselves as the actual buyers of the firearms. In fact, during sentencing, Villa-Carvajal argued that his conduct of "telling them what to do" was inherent in the charges against him. Moreover, Ruiz indicated to ATF agents that Villa-Carvajal provided him with money to buy the firearms, informed him which type of firearms to purchase, and directed him where to purchase the firearms. As to Rios, Villa-Carvajal told ATF agents that he had manipulated her into purchasing firearms. Additionally, when Villa-Carvajal met the undercover ATF agent, he showed decision making authority by negotiating the agent's commission for his work as straw purchaser. *See* U.S.S.G. § 3B1.1, comment. (n.4). Based on these facts, Villa-Carvajal's case is distinguishable from *Yates* because, here, Villa-Carvajal was not a mere middleman. *See Yates*, 990 F.2d at 1182. To the contrary, there was evidence that Villa-Carvajal exercised some degree of control over the other participants and that he had decision making authority. *See Jennings*, 599 F.3d at 1253; *see* U.S.S.G. § 3B1.1, comment. (n.4). Thus, the district court did not err, plainly or otherwise, by imposing the two-level enhancement for Villa-Carvajal's leadership role.

For the foregoing reasons, we affirm Villa-Carvajal's sentence.

**AFFIRMED.**