[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15651

_____

D.C. Docket No. 1:13-cr-00350-SCJ-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

EMMANUEL ASANTE,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 6, 2015)

Before MARCUS, JILL PRYOR and EBEL,[*] Circuit Judges.

EBEL, Circuit Judge:

_____
[*] Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

Emmanuel Asante pled guilty to two firearms offenses and the district court sentenced him at the bottom of the advisory sentencing guideline range to forty-six months in prison.  Asante claims that the district court erred in calculating his sentencing range because the court enhanced his offense level for both trafficking and exporting firearms without sufficient evidence to support either enhancement. He further contends that, even if there was evidence to support each of those enhancements, to apply both in Asante's case impermissibly double-counted the same conduct.  We reject each of those arguments and further conclude that Asante's sentence at the bottom of the properly calculated sentencing range was not substantively unreasonable.  Lastly, we reject Asante's complaint that the district court should have redacted information in the presentence report ("PSR") regarding threats he made against the prosecutor and a magistrate judge who denied Asante's request for pretrial release on bond.  Therefore, having jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. §1291, we AFFIRM.

## BACKGROUND

Asante pled guilty to 1) conspiring to make false statements to a federally licensed firearms dealer; and 2) making, or aiding and abetting, false statements regarding information that a federally licensed firearms dealer is required to keep in his records.  See 18 U.S.C. §§ 2, 371, 924(a)(1)(A).  These offenses were part of

2

a scheme whereby Asante, who could not lawfully possess a firearm, would pay his co-defendant, Johnny White, to buy weapons for Asante.[1] When White purchased the firearm underlying Asante's convictions, White falsely represented to a federally licensed firearms dealer that he, White, was the intended owner. The district court sentenced Asante at the bottom of his advisory sentencing guideline range, to forty-six months in prison, for each firearms offense, the sentences to run concurrently.

## DISCUSSION

### I. The district court properly enhanced Asante's offense level for both trafficking and exporting firearms

Asante claims that the district court erred in calculating his advisory guideline range by improperly enhancing his offense level for both trafficking and exporting firearms. Asante specifically contends that there was insufficient evidence to justify applying either of those enhancements in his case and that, even if there was sufficient evidence to support each of those enhancements, it was impermissible double-counting to apply both to him.

---

[1]Asante could not lawfully possess firearms because 1) he is a citizen of Ghana admitted to the United States on a non-immigrant student visa; and 2) at the time of these offenses Asante was unlawfully in the United States, having overstayed his student visa. See 18 U.S.C. § 922(g)(5)(A), (B).

3

**A.  The Government presented sufficient evidence for the district court to find that each of the enhancements applied to Asante**

When, as here, "the government seeks to apply an enhancement under the Sentencing Guidelines over a defendant's factual objection, [the United States] has the burden of introducing sufficient and reliable evidence to prove the necessary facts by a preponderance of the evidence." United States v. Isaacson, 752 F.3d 1291, 1305 (11th Cir. 2014) (internal quotation marks omitted), cert. denied, 135 S. Ct. 990 (2015).  This court reviews the district court's application of the sentencing guidelines de novo and its factual findings for clear error.  See id.

**1.  Evidence before the sentencing court**

The evidence before the sentencing court included the following: After tracing a firearm found at a Maryland crime scene back to White, who lived in Georgia, agents from the Bureau of Alcohol, Tobacco and Firearms ("ATF") questioned White about nine guns he had purchased during an eight-month period. White explained that he had purchased most of those weapons—five to seven guns—for a friend who could not buy firearms himself.  That friend, Asante, told White that he was transporting the guns in order to make some money.  Asante would designate which firearms White should buy—usually smaller caliber weapons which Asante could more easily transport, tell White where to buy guns, and then give White the means with which to buy the weapons.

4

At the ATF agents' request, White called Asante and asked him why ATF agents would be asking White about the guns White bought for Asante. During that recorded call, Asante told White that there should be no problem with those guns because they were out of the country, having been hidden in cars that were then shipped to Jamaica, where Asante's people retrieved them. In a second recorded call, Asante told White that Asante's brother in Jamaica had all but one of the smuggled guns. And Asante's brother knew who had the last gun; there was no problem with that gun, either.

### 2. There was sufficient evidence to apply the trafficking enhancement, U.S.S.G. § 2K2.1(b)(5), to Asante

To calculate the offense level of a firearms offender like Asante, the district court begins with U.S.S.G. § 2K2.1. Section 2K2.1(b)(5), at issue here, increases the offense level by four if the firearms offender "engaged in the trafficking of firearms." In order for this offense-level enhancement to apply in a given case, the Government must prove that the defendant 1) transported or transferred, or received with the intent to transport, two or more firearms to someone else; 2) knowing that the defendant's conduct would result in another's unlawful possession, use or disposal of those firearms. U.S.S.G. § 2K2.1, app. n.13(A).[2]

---

[2]More precisely, the trafficking enhancement states that it:

Asante does not challenge the Government's proof of the first circumstance, that he transferred, or received with the intent to transfer, more than two firearms to someone else.  But Asante contends the Government failed to prove that he "[k]new or had reason to believe" that his conduct would result in another's unlawful possession, use or disposal of the firearm.  There are two ways the Government can prove that second circumstance.  See id.  We address each of those two manners of proof next.

### a.  The Government failed to prove that Asante knew or had reason to believe that his conduct would result in the transfer of a firearm to an individual "whose possession or receipt of the firearm would be unlawful"

---

applies, regardless of whether anything of value was exchanged, if the defendant—

(i) [t]ransported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and

(ii) [k]new or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—

> (I) Whose possession or receipt of the firearm would be unlawful; or

> (II) Who intended to use or dispose of the firearm unlawfully.

U.S.S.G. § 2K2.1, app. n.13(A).

6

The Government could first prove that the defendant "[k]new or had reason to believe that [his] conduct would result in the transport, transfer, or disposal of a firearm to an individual . . . [w]hose possession or receipt of the firearm would be unlawful." Id., app. n. 13(A)(ii)(I).  The guidelines narrowly define an "[i]ndividual whose possession or receipt of the firearm would be unlawful" to "mean[] an individual who (i) has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or (ii) at the time of the offense was under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape." Id., app. n. 13(B).  Because the Government failed to present any evidence that Asante knew that his conduct would result in a firearm being transferred to such an individual, the district court erred in finding that the trafficking enhancement applied on this basis.

### b.  There was sufficient evidence to find that Asante knew or had reason to believe that his conduct would result in the transfer of a firearm to an individual "who intended to use or dispose of the firearm unlawfully"

The second way the trafficking enhancement can apply is if the Government proves that the defendant "[k]new or had reason to believe that [his] conduct would result in the transport, transfer, or disposal of a firearm to an individual . . . [w]ho intended to use or dispose of the firearm unlawfully." Id., app. n.13(A)(ii)(II).

7

Asante contends that the district court erred in finding that the trafficking enhancement applied to him on this basis, because the Government presented no evidence as to whom Asante transferred the firearms or what the individuals along the chain of possession intended to do with the weapons.

Even without such information, however, the trafficking enhancement can apply if the circumstances, known to the defendant when he transferred the firearms, or received the firearms with the intent to transfer them, established that the defendant "[k]new or had reason to believe" that his conduct would result in the transfer of a firearm to someone "[w]ho intended to use or dispose of the firearm unlawfully." Id. Critically, in applying the trafficking enhancement in this manner, a court looks, not to what actually happened to the firearms, but instead to the circumstances known to the defendant. Several unpublished Eleventh Circuit decisions have applied the trafficking enhancement in this way. In United States v. Hernandez, for example, this court upheld applying the trafficking enhancement based on the circumstances known to Defendant Salvador Luna. 572 F. App'x 962, 963 (11th Cir. 2014) (per curiam) (unpublished). Those circumstances included the following:

> [Luna] was recruited by an individual whom he knew only by his first name, Jose; Luna knew that Jose had recruited other individuals to purchase firearms; Luna paid [his co-defendant] Sergio Hernandez to purchase six firearms; Jose gave Luna a Jeep vehicle to transport the

8

firearms to Mexico; Luna registered the Jeep in his name; Luna knew Jose hid the firearms in the door panels of the Jeep; Luna drove the Jeep to Mexico in exchange for $3,000 upon delivery of the firearms to Jose's brother; and Luna previously had transported cars to Mexico on numerous occasions, where he "legalized" them.

Id.  From these circumstances, we held that the sentencing

court reasonably inferred that Luna knew the guns would be disposed of unlawfully because he knew of Jose's clandestine tactics and because Luna used a straw man to purchase the firearms and smuggled them into Mexico . . . . Luna's use of surreptitious methods to acquire and to deliver the firearms eliminated any plausible belief that those firearms would be used for innocent, or legal, purposes.

Id. (internal quotation marks, alterations omitted).

We similarly upheld application of the trafficking enhancement in United States v. West, based on the suspicious circumstances known to the defendant, and not on the transferees who actually ended up with the firearms nor on what those transferees actually did with the firearms.  563 F. App'x 745, 746-47 (11th Cir. 2014) (per curiam) (unpublished).  In fact, because the defendant there, West, sold the firearms at issue to undercover officers, there was no evidence that the firearms actually ended up being transferred to someone "who intended to use or dispose of the firearm unlawfully."  Id. at 747.  Still, we upheld applying the trafficking enhancement because the evidence established that West "'had reason to believe' that the undercover officers would take the guns to the New York area and resell

9

them to individuals who would dispose of or use them illegally." Id. That

evidence included the following:

> (1) West sold a total of seven guns to the undercover officers over several transactions; (2) the undercover officers told West that they intended to re-sell the guns "up north" in the New York area at double the price they paid West; (3) one of the undercover officers later told West that he made $800 selling a 9mm pistol that he had purchased from West for $275; (4) the undercover officers sought and purchased guns, such as assault rifles and handguns, designed for use on humans, not for hunting; (5) one undercover officer asked West about the serial numbers on the guns, and, when West indicated the guns were stolen, the officer told West that the officer would have to "do some work" to the guns, meaning he would have to obliterate the serial numbers; and (6) West was careful not to handle the guns with his bare hands and wiped the guns off before giving then to the undercover officers.

Id.; see also United States v. McMillar, 518 F. App'x 867, 868-69 (11th Cir. 2013)

(per curiam) (unpublished) (upholding application of trafficking enhancement

because defendant knew or had reason to believe firearms would end up with one

who would unlawfully use or dispose of the firearm, where defendant sold firearms

to undercover officers who told the defendant that the officers made a profit selling

guns in New York, they wanted to buy only smaller weapons that could be

concealed, and they could sell the guns in New York for twice what they paid for

them in Georgia); United States v. Grinnage, 309 F. App'x 334, 335-36 (11th Cir.

2009) (per curiam) (unpublished) (upholding applying trafficking enhancement

because defendant had reason to believe he was transferring firearm to one who

10

intended to use or dispose of it unlawfully, where undercover officer to whom the defendant sold the firearm told defendant that the officer spent the money he made selling guns at a tattoo parlor in order to "make it look legit").[3]

We adopt the reasoning of these unpublished decisions. Applying it here, we conclude that the evidence at Asante's sentencing was sufficient for the district court to find that, at the time Asante received and transferred the firearms, he "[k]new or had a reason to believe" that his conduct would result in the transfer of a firearm to one "[w]ho intended to use or dispose of the firearm unlawfully." That evidence included the following: Asante used a straw buyer, his co-defendant White, to purchase five to seven guns unlawfully; during the scheme, Asante told White that he was "transporting" the firearms in order to make some money; and,

_____

[3] Other circuits have applied this same reasoning, though also mostly in unpublished decisions. See United States v. Marceau, 554 F.3d 24, 31-32 (1st Cir. 2009) (upholding application of trafficking enhancement, after finding defendant knew or had reason to know that he was transferring firearm to one who intended to use or dispose of the weapon unlawfully because he stated that he intended to steal firearms, bring them to Vermont, remove the serial numbers, and then exchange the guns for drugs, and he acted in accord with his stated intent); United States v. Melvin, 463 F. App'x 141, 147 (3d Cir. 2012) (unpublished) (upholding application of trafficking enhancement, after finding defendant knew or had reason to know that he was transferring firearm to one who intended to use or dispose of the weapon unlawfully because of the number and type of firearms involved, the fact that defendant was being paid the "black market rate," and the "secretive nature of the transactions"); United States v. Walker, 375 F. App'x 68, 71 (2d Cir. 2010) (unpublished) (upholding application of trafficking enhancement, after finding defendant knew or had reason to know that he was transferring firearm to one who intended to use or dispose of the weapon unlawfully because the defendant delivered the firearms "in a furtive manner" and "vouched that the guns were either fully automatic or could be converted to fully automatic weapons"); cf. United States v. Green, 360 F. App'x 521, 524-25 (5th Cir. 2010) (per curiam) (unpublished) (applying same analysis but holding there was insufficient evidence to support applying the trafficking enhancement because there was no evidence of what the defendant knew or had reason to believe).

11

to facilitate Asante's transportation of the firearms, he directed White to buy smaller caliber guns. The evidence further supports the inference that Asante knew that the firearms he obtained from White would be hidden in cars that were being shipped to Jamaica, where Asante's brother would retrieve the smuggled firearms. This evidence was sufficient for the district court to apply the trafficking enhancement to Asante because he "[k]new or had reason to believe" that his conduct would result in the transfer of these firearms to one "[w]ho intended to use or dispose of the firearm[s] unlawfully."

### 3.  There was sufficient evidence to apply the exporting enhancement, U.S.S.G. § 2K2.1(b)(6)(A), to Asante

In addition to enhancing Asante's offense level for trafficking firearms, the district court applied an additional four-level enhancement for exporting firearms, U.S.S.G. § 2K2.1(b)(6)(A).[4] Based on the recorded calls, during which Asante assured his co-defendant White that the guns White bought for Asante were smuggled out of the United States in cars sent to Jamaica, where Asante's brother retrieved them, we reject Asante's argument that the Government failed to present enough evidence for the district court to find that the firearms actually left the

---

[4]Section 2K2.1(b)(6)(A) applies "[i]f the defendant . . . [p]ossessed any firearm or ammunition while leaving or attempting to leave the United States, or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be transported out of the United States."

12

United States. Asante argues only that perhaps he was lying to White when Asante told White the guns were out of the country. But the district court deemed Asante's statements during the recorded calls to be credible, and "[w]e accord great deference to the [sentencing] court's credibility determinations," United States v. Barsoum, 763 F.3d 1321, 1333 (11th Cir. 2014) (internal quotation marks omitted) (addressing credibility of drug quantity witnesses).[5]

### B. Applying both the trafficking and the exporting enhancements to Asante did not amount to impermissible double-counting

Asante next argues that applying both the trafficking and exporting enhancements impermissibly double-counted his involvement in shipping the firearms out of the United States. We review this argument de novo. See United

---

[5] To the extent Asante argued for the first time during oral argument that there was insufficient evidence to establish, by a preponderance, that he "possessed or transferred" the firearms "with knowledge, intent, or reason to believe that [they] would be transported out of the United States," we reject that argument. There was sufficient evidence before the district court to support the implicit finding that, at the time Asante "possessed or transferred" the firearms, he knew, intended, or had reason to believe that the firearms would be transported out of the United States. That evidence included Asante's statements, during the two recorded calls between Asante and White, that the guns were hidden in cars and sent out of the United States to Jamaica; "every car that we sent made it safely"; "my" (Asante's) people had been able to take everything out of the cars; "I have not talked to anybody there in the last week to see if anyone has a problem" with the guns, but Asante agreed to check; after checking with his "brother," Asante assured White that, of the five guns sent to Jamaica, Asante's brother had four of them and the brother would check with the person who had the fifth. In a later, unrecorded call, Asante told White that there was no problem with the fifth gun, either. In addition to these recorded calls that occurred after the guns were already in Jamaica, at the time Asante was buying guns through White, Asante told White that Asante was transporting the guns in order to make money.

13

States v. Flanders, 752 F.3d 1317, 1339 (11th Cir. 2014), cert. denied, 135 S. Ct. 1188 (2015).

"Impermissible double counting occurs only when one part of the [Sentencing] Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Cubero, 754 F.3d 888, 894 (11th Cir.) (internal quotation marks omitted), cert. denied, 135 S. Ct. 764 (2014). But

> [d]ouble counting a factor during sentencing is permitted if the Sentencing Commission intended that result and each guideline section in question concerns conceptually separate notions relating to sentencing. We presume that the Commission intended to apply separate sections cumulatively unless otherwise specified, and, as a result, a defendant asserting a double counting claim has a tough task.

Flanders, 752 F.3d at 1340 (citations, internal quotation marks omitted).

Applying both the trafficking and the exporting enhancements to Asante was not impermissible double-counting. We start with the presumption that the Sentencing Commission intended that these two enhancements, listed separately in U.S.S.G. § 2K2.1, be applied cumulatively. See Flanders, 752 F.3d at 1340. Next, adopting the reasoning of United States v. Villa Carvajal, 516 F. App'x 808, 811 (11th Cir. 2013) (per curiam) (unpublished), we conclude that each of these enhancements addresses "conceptually separate notions relating to sentencing," Flanders, 752 F.3d at 1340. Villa-Carvajal reasoned that the trafficking and

14

exporting enhancements "address two different kinds of harm." 516 F. App'x at 811. The trafficking enhancement increases a firearm offender's offense level for conduct that he knows or has reason to believe will result in a firearm being transferred to someone whose possession or use of that weapon is unlawful, regardless of whether that unlawful use or possession occurs in or out of the United States. Id. The exporting enhancement, on the other hand, is concerned instead with a firearm offender's conduct undertaken with the intent to export firearms out of the United States, even if the offender was not trafficking (meaning he did not know or have a reason to believe that the weapon would be possessed or used by another unlawfully). Id. Because these two enhancements are aimed at different harms, neither enhancement "fully account[s]" for both harms, Cubero, 754 F.3d 888, 894. See United States v. White, 663 F.3d 1207, 1217 (11th Cir. 2011). Therefore, applying both enhancements to Asante did not amount to impermissible double-counting. See Villa Carvajal, 516 F. App'x at 811; see also United States v. Mendoza, 556 F. App'x 326, 327 (5th Cir. 2014) (per curiam) (unpublished) (rejecting similar double-counting argument).

## II. Asante's sentence is not substantively unreasonable

Properly including the four-level enhancement for trafficking firearms and the four-level enhancement for exporting firearms, the district court calculated

15

Asante's offense level to be 21 and his criminal history category to be III, resulting in an advisory guideline range of forty-six to fifty-seven months in prison. The district court imposed a sentence at the bottom of that range, forty-six months, for each of Asante's two convictions, to run concurrently.

Asante contends that this sentence was substantively unreasonable. We review the substantive reasonableness of a sentence for an abuse of discretion. See United States v. Baldwin, 774 F.3d 711, 729 (11th Cir. 2014). In doing so, we will "not automatically presume a sentence within the guidelines range is reasonable," but we "ordinarily expect a sentence within the Guidelines range to be reasonable." United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008) (internal quotation marks, alteration omitted). We "will remand for resentencing only if the district court committed a clear error of judgment in weighing the [18 U.S.C.] § 3553(a) [sentencing] factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Baldwin, 774 F.3d at 731 (internal quotation marks omitted). It is Asante's burden to show that his sentence is substantively unreasonable. See id. at 731-32.

Asante has not met his burden. Before sentencing Asante to forty-six months in prison, the district court considered and discussed the § 3553(a) factors and rejected Asante's request for a sentence below the guidelines advisory range.

16

In doing so, the court noted that Asante's relevant offense conduct, particularly in exporting firearms outside the United States, was very serious; a significant sentence was necessary to deter others from sending illegal firearms to poor countries; Asante's prior criminal history, though nonviolent, "was not very good"[6]; even though Asante apologized, he did not really appear remorseful; and the fact that Asante had a wife and two young daughters did not warrant a below-guideline sentence. The district court, thus, carefully weighed the § 3553(a) factors before imposing a sentence within, but at the bottom of, the advisory guideline range. We cannot say that sentence was the product of a "clear error of judgment," nor that it was "outside the range of reasonable sentences dictated by the facts of th[is] case," Baldwin, 774 F.3d at 731.

## III. The district court did not abuse its discretion in refusing to redact from the PSR information that Asante threatened the prosecutor and a magistrate judge

Lastly, Asante argues that the district court should have redacted information in the PSR indicating that Asante, during a phone call he made from jail to his wife, threatened the prosecutor and the magistrate judge who denied Asante

---

[6] Asante had five prior convictions: forging coin and bank notes; obtaining money under false pretenses; two convictions for marijuana possession; and manufacturing a controlled substance, cocaine. Asante had two additional convictions for driving while his license was revoked or suspended, and an additional nine traffic citations. Within one year of entering the United States to study, at age nineteen, Asante had already been convicted of forging coin and bank notes.

17

pretrial release. Although the district court did not consider the threats when it sentenced Asante, the court nevertheless refused to redact this information, ruling it was important information for the Bureau of Prisons to have.

As a general matter, 18 U.S.C. § 3661 provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Furthermore, Fed. R. Crim. P. 32(d)(2)(A) requires the PSR to include information about the defendant's history and characteristics, including "any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional treatment," Rule 32(d)(2)(A)(iii). Rule 32(d)(3), on the other hand, excludes only three narrow categories of information from the PSR: 1) "any diagnoses that, if disclosed, might seriously disrupt a rehabilitation program"; 2) "any sources of information obtained upon a promise of confidentiality"; and 3) "any other information that, if disclosed, might result in physical or other harm to the defendant or others."

The information at issue here, Asante's threats against the prosecutor and magistrate judge, does not fall into any of the categories of information that <u>cannot</u> be included in the PSR. Cf. <u>United States v. Bartlett</u>, 416 F. App'x 508, 510-11

18

(6th Cir. 2011) (unpublished) (holding accusation that defendant had sexually assaulted a child, without more, is too speculative to fall within Rule 32(d)(3)(C)'s exclusion of information that might harm the defendant).  Arguably its falls into the category of information regarding Asante's history and characteristics which Fed. R. Crim. P. 32(d)(2)(A) requires the PSR to contain.  But even if the rules do not <u>require</u> the PSR to contain the information about Asante's threats, the district court had discretion to include it in the PSR.  <u>See</u> <u>Bartlett</u>, 416 F. App'x at 510-11; <u>United States v. Bahr</u>, No. 3:11-CR-00028-BR, 2014 WL 4631198, at *7-*9 (D. Or. Sept. 15, 2014).  And the court did not abuse its discretion here in refusing to redact from the PSR the information about the threats.

## CONCLUSION

For the foregoing reasons, we AFFIRM Asante's concurrent forty-six-month sentences and the district court's decision not to redact from the PSR information regarding threats Asante made against the prosecutor and a magistrate judge.