[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14496
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cr-20334-FAM-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RONALD MORROBEL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 5, 2018)

Before TJOFLAT, MARTIN, and BRANCH, Circuit Judges.

PER CURIAM:

Ronald Morrobel appeals his 210-month sentence, imposed after he pled guilty to conspiracy to possess with intent to distribute 28 grams or more of crack cocaine and a detectable amount of heroin, dealing in firearms without a license, and being a felon in possession of a firearm and ammunition.  He argues the district court erred by enhancing his sentence under two United States Sentencing Guidelines provisions and the Armed Career Criminal Act ("ACCA").

I.

Morrobel and two co-defendants, Juan Videa and David Marshall, were indicted in May 2017.  The indictment charged Morrobel with conspiracy to possess with intent to distribute 28 grams or more of cocaine base and a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), and 846; dealing in firearms without a license, in violation of 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D), and 18 U.S.C. § 2; four counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and possessing with intent to distribute a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2.

Morrobel pled guilty to conspiracy to possess with intent to distribute cocaine base and heroin, unlicensed firearms dealing, and one count of possession of a firearm by a convicted felon.  The government dismissed all other counts.  As part of the guilty plea, the parties stipulated to a factual proffer stating that

2

Morrobel sold guns and drugs to undercover officers several times.  The proffer specified that Morrobel "personally sold narcotics" and "firearms and ammunition to members of the law enforcement investigation."

Before sentencing, a probation officer prepared a presentence investigation report ("PSR").  The PSR calculated Morrobel's base offense level as 22 under United States Sentencing Guideline § 2K2.1.  It applied several offense-level enhancements, including a four-level enhancement under Guidelines § 2K2.1(b)(5) for trafficking in firearms as well as a four-level enhancement under Guidelines § 2K2.1(b)(6)(B) for possessing a gun in connection with another offense.  The PSR also classified him as an armed career criminal.  Morrobel filed objections to the PSR, arguing, among other things, that the enhancements for trafficking in firearms and possessing a firearm in connection with another felony offense did not apply and that he was not an armed career criminal.

The district court sentenced Morrobel and his codefendants at the same hearing but addressed each separately.  The court overruled Morrobel's objections to the enhancements under Guidelines § 2K2.1(b)(5) and (b)(6)(B), as well as ACCA.  It determined Morrobel's final offense level was 34 and his criminal history category was VI, resulting in a guideline range of 262 to 327 months.  The court varied downward from the Guidelines and sentenced Morrobel to 210 months. This appeal followed.

II.

We recognize at the outset that this was an unusual sentencing hearing. All three codefendants were sentenced at the same hearing, which lasted much of the day, although there were several breaks. The defendants each raised similar objections, particularly the objections to Guideline § 2K2.1(b)(5) and (b)(6)(B). The district court began the hearing by asking each defendant whether he had read the PSR (all three had), but the court did not ask whether the defendants had any factual objections to the PSR. The court also never expressly adopted the facts contained in the PSR. In the morning, the court heard from Videa's counsel then from Marshall's counsel.

During these early parts of the hearing, the record shows the court understood from the limited details in the factual proffer and the nature of the parties' objections to the PSR that the parties "don't agree on anything with the facts." The court repeatedly offered to vacate the guilty pleas so the parties could litigate the facts in front of a jury. In this way, for Videa, and perhaps for Marshall as well, the court appeared to consider only the factual proffer and facts expressly admitted by the defendants at sentencing, while not relying on the facts contained in the PSR.

But once the court turned to Morrobel's objections, the court and the parties seemed to have arrived at a firmer grasp of what facts were agreed to and what

4

objections remained.  Thus, in the portion of the transcript in which Morrobel made his objections to the sentencing enhancements, there appears to be agreement about the facts, such that the dispute was about the legal implications of those facts.  The court seemed to understand the parties' dispute as being about whether the agreed upon facts satisfied the legal requirements for enhancements under the Guidelines and ACCA.  On appeal, the government relies heavily on the facts contained in the PSR.  Morrobel does not argue those facts were not admitted.  We therefore find it appropriate to rely on the facts contained in the PSR to resolve Morrobel's appeal.

We now turn to Morrobel's challenges to the two Guideline enhancements imposed by the district court.  In assessing the imposition of a sentencing enhancement, we review the district court's findings of fact for clear error and its application of the Guidelines de novo.  United States v. Perez-Oliveros, 479 F.3d 779, 783 (11th Cir. 2007).

## A.

Morrobel challenges the district court's enhancement of his sentence under Guideline § 2K2.1(b)(5).  That section applies if the defendant

> (i) transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and

(ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—

    (I) whose possession or receipt of the firearm would be unlawful; or

    (II) who intended to use or dispose of the firearm unlawfully.

USSG § 2K2.1 cmt. n.13.  When deciding whether a defendant knew his conduct would result in the transfer of a firearm to someone who intended to dispose of it illegally, we look "to the circumstances known to the defendant."  United States v. Asante, 782 F.3d 639, 644 (11th Cir. 2015).

In Asante, this court upheld the district court's application of the § 2K2.1(b)(5) trafficking-in-firearms enhancement.  782 F.3d at 646. The record in Asante showed the defendant told his codefendant that he was transporting firearms to make money, directed the codefendant to purchase smaller caliber guns to facilitate the transport, and was aware that those firearms would be then concealed in cars and shipped abroad to his brother, who planned to retrieve the smuggled firearms.  Id.  This evidence supported the inference that, at the time the defendant received and transferred the firearms, he knew or had a reason to believe that his conduct would result in the transfer of the firearms to a person who intended to use or dispose of the firearms unlawfully.  Id.

For Morrobel, the district court did not clearly err in applying the four-level trafficking-in-firearms enhancement.  The PSR established that Morrobel

6

transferred more than two firearms to the undercover agent and thus satisfied the first prong of the enhancement.  See USSG § 2K2.1 cmt. n.13(A)(i).  As to the second prong, the undisputed facts in the PSR were that Morrobel sold at least 28 grams of crack cocaine and several firearms, including four fully or semi-automatic rifles and a revolver with a defaced serial number, in a series of transactions with the same buyer.  Despite Morrobel's argument that he was never on notice that the buyers intended to use the firearms for future criminal activity, the PSR noted that Morrobel sold several firearms with silencers or large capacity magazines, one of which was stolen and one of which had a defaced serial number.  Given the number of Morrobel's transactions with the same buyer as well as the types of firearms sold, the record supported the district court's finding that Morrobel knew or had reason to believe that he transferred firearms to someone who intended to use them to engage in unlawful armed-drug trafficking or other criminal conduct.  See USSG § 2K2.1(b)(5); id., § 2K2.1 cmt. n.13(A)(ii)(II); Asante, 782 F.3d at 645–46.  We therefore affirm on this issue.

B.

Morrobel also challenges the district court's application of Guideline § 2K2.1(b)(6).  That Guideline provides for a four-point increase in offense level if the defendant

> (A) possessed any firearm or ammunition while leaving or attempting to leave the United States, or possessed or transferred any firearm

7

or ammunition with knowledge, intent, or reason to believe that it would be transported out of the United States; or

(B) used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense[.]

Id. The Guideline commentary explains that the firearm must have "facilitated, or had the potential of facilitating, another felony offense." Id. § 2K2.1 cmt. n.14(A). If the other felony offense is "a drug trafficking offense in which a firearm is found in close proximity to drugs," the enhancement applies. Id. § 2K2.1 cmt. n.14(B). The commentary defines "[a]nother felony offense" as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." Id. § 2K2.1 cmt. n.14(C). The commentary also states that the enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia . . . because the presence of the firearm has the potential of facilitating another felony offense." Id. § 2K2.1 cmt. n.14(B).

The district court did not err by enhancing Morrobel's sentence by four levels under § 2K2.1(b)(6)(B). During a single transaction, Morrobel sold the confidential source $200 worth of crack cocaine and a Smith and Wesson Air

8

Weight .38 revolver with a defaced serial number.  Morrobel's simultaneous possession of drugs and a firearm during this transaction potentially emboldened him to make the drug sale.  See USSG § 2K2.1(b)(6)(B); id. § 2K2.1 cmt. n.14(A)–(B); United States v. Gainey, 111 F.3d 834, 837 (11th Cir. 1997).  We therefore affirm on this issue as well.

### III.

Morrobel next argues he is not an armed career criminal because his conviction for Florida aggravated assault does not qualify as a violent felony.  We review de novo whether a prior conviction qualifies as a violent felony within the meaning of ACCA.  United States v. Hill, 799 F.3d 1318, 1321 (11th Cir. 2015) (per curiam).  ACCA provides that a defendant convicted of possession of a firearm as a convicted felon who has three previous convictions for a violent felony or a serious drug offense shall be imprisoned not less than 15 years.  18 U.S.C. § 924(e)(1).  "Violent felony" is defined, in relevant part, as any crime punishable by a term of imprisonment exceeding one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  Id. § 924(e)(2)(B)(i).

This Court has held that a Florida aggravated assault conviction under Florida Statute § 784.021 "will always include as an element the threatened use of physical force against the person of another . . . and thus qualifies as a violent

9

felony for the purposes of the ACCA." Turner v. Warden Coleman FCI, 709 F.3d 1328, 1338 (11th Cir. 2013) (quotation marks omitted and alterations adopted). This holding was reaffirmed in United States v. Golden, 854 F.3d 1256 (11th Cir. 2017) (per curiam), which relied on Turner to hold that aggravated assault under § 784.021 is a crime of violence under the identical definition provided in Guideline § 2K2.1(a)(2). Golden, 854 F.3d at 1256–57.

Based on this court's decisions in Golden and Turner, the district court did not err in finding Morrobel's prior conviction for aggravated assault with a deadly weapon under § 784.021(1)(a) constituted a violent offense for purposes of his ACCA sentence enhancement. Although Morrobel argues that Turner was wrongly decided, we are bound to apply it unless it is overturned by the Supreme Court or by this court sitting en banc. See Golden, 854 F.3d at 1257. We therefore affirm on this issue.

**AFFIRMED.**