[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14255

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ROBERTO NUNEZ-CEBRERO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:20-cr-00026-PGB-GJK-1

_____

Before JORDAN, NEWSOM, and LAGOA, Circuit Judges.

PER CURIAM:

Roberto Nunez-Cebrero appeals his sentence of 300 months' imprisonment for possessing, and conspiring to possess, heroin with the intent to distribute. He argues that the district court erred by enhancing his sentence pursuant to U.S.S.G. § 3B1.1(b) for his role as a manager or supervisor and U.S.S.G. § 2D1.1(b)(12) for maintaining a residence to distribute controlled substances. Because there was substantial evidence to support both enhancements, we affirm.

I

Mr. Nunez-Cebrero pleaded guilty to one count of conspiring to possess heroin with the intent to distribute, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(A), and three counts of possession of heroin with the intent to distribute, in violation of § 841(a)(1), (b)(1)(B). The final presentence investigation report ("PSI") stated that Mr. Nunez-Cebrero was the head of a drug-trafficking organization that shipped kilograms of heroin from Chicago, Illinois, to Kissimmee, Florida, for over seven years. His Kissimmee residence served as a distribution center where he received shipments of heroin, stored the related proceeds, and maintained the organization's records. Mr. Nunez-Cebrero also boarded horses and lived with his family there.

A confidential source ("CS") purchased heroin from a code-fendant, Yenitza Garcia-Cosme. On multiple occasions, Ms. Garcia-Cosme retrieved heroin from Mr. Nunez-Cebrero's residence, sold it to the CS, and then returned to the residence to deposit the proceeds. In another instance, Mr. Nunez-Cebrero and the CS coordinated the sale of 250 grams of heroin at a price of $55 per gram. After agreeing to the sale, Mr. Nunez-Cebrero sent Luis Vazquez-Trujillo, a co-conspirator, to retrieve payment and immediately return to the residence. DEA task force agents intercepted numerous phone calls in which Mr. Nunez-Cebrero discussed the transport of heroin and money from Chicago to Florida. For example, Mr. Nunez-Cebrero coordinated a sale of 462.3 grams of heroin with the CS and then directed codefendant Jose Robles-Roque to deliver the drugs and retrieve payment.

The PSI concluded that Mr. Nunez-Cebrero was a manager or supervisor of the drug trafficking organization and that he maintained a premises to distribute heroin. The PSI determined that Mr. Nunez-Cebrero had a base offense level of 38 under U.S.S.G. § 2D1.1(a)(5), (c)(1). Mr. Nunez-Cebrero then received a two-level enhancement for maintaining a premises to manufacture or distribute a controlled substance under § 2D1.1(b)(12), as well as a three-level enhancement for acting as a manager or supervisor under § 3B1.1(b). His offense level was then reduced by three levels for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b), resulting in a total offense level of 40. With a base level offense of 40 and a criminal history category of I, the PSI calculated Mr. Nunez-

Cebrero's advisory guideline range to be 292 to 365 months' imprisonment.  Mr. Nunez-Cebrero objected to the PSI's determinations that he maintained a premises for drug distribution and that he was a manager or supervisor in the narcotics scheme.

At the sentencing hearing, a DEA task force agent testified that he and other officials intercepted phone calls between Mr. Nunez-Cebrero, Mr. Vazquez-Trujillo, and Antonio Moya. In these calls, Mr. Nunez-Cebrero directed Mr. Vazquez-Trujillo to deliver kilograms of heroin to Mr. Moya in Chicago, who would then deliver them to Mr. Nunez-Cebrero in Florida.  On the way to Florida, Mr. Moya was stopped by agents who discovered three kilograms of heroin in his vehicle.  Mr. Moya identified Mr. Nunez-Cebrero as the recipient of the heroin and stated that he had previously delivered multiple kilograms of heroin from Chicago to the Kissimmee residence over the course of twenty trips.  During the search of the Kissimmee residence, agents found receipts showing that Mr. Nunez-Cebrero purchased the residence for $345,000 in cash.  The residence was the "hub" of Mr. Nunez-Cebrero's drug activity.

On cross-examination, the task force agent testified that Mr. Nunez-Cebrero gave directions to at least ten people, while never receiving orders from anyone.  He also testified that Mr. Nunez-Cebrero set the price of the heroin.  The task force agent could not say that drug manufacturing took place at the residence, but that drug distribution did.

The district court overruled the objection to the § 3B1.1 enhancement because Mr. Nunez-Cebrero made decisions regarding the price of the heroin, directed people to travel with drugs or return with money, and had an apparent right to a larger share of the profits, as evidenced by the $345,000 residence he bought. The court found that the extensive nature and scope of the illegal activity and his considerable control over others supported the role enhancement. The district court also overruled Mr. Nunez-Cebrero's objection to the § 2D1.1(b)(12) enhancement because the Kissimmee residence was used to package, distribute, and store heroin and to keep drug sale proceeds. The court adopted the PSI's guideline range of 292 to 365 months' imprisonment and sentenced Mr. Nunez-Cebrero to 300 months' imprisonment.

## II

We review a district court's application of the Sentencing Guidelines *de novo* and its factual findings for clear error. *See United States v. Asante*, 782 F.3d 639, 642 (11th Cir. 2015). For a finding to be clearly erroneous, we must be left with a firm conviction that a mistake has been committed. *See United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010).

The government bears the burden of establishing the facts necessary to support a sentencing enhancement by a preponderance of the evidence. *See United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015). Sentencing courts can consider hearsay evidence so long as the defendant has an opportunity to refute it and the evidence bears minimal indicia of reliability. *See United*

6                    Opinion of the Court                    20-14255

*States v. Hall*, 965 F.3d 1281, 1294 (11th Cir. 2020). To successfully challenge a sentence based on the consideration of hearsay, a defendant must show that the challenged evidence is materially false or unreliable and that it actually served as the basis for the sentence. *See id.*

## III

We affirm the district court's application of both sentencing enhancements. There was substantial evidence to support each one and the district court did not clearly err in imposing them.

## A

Mr. Nunez-Cebrero contends that the § 3B1.1 role enhancement was not supported by sufficient evidence because the only evidence presented was the task force agent's hearsay testimony. As noted, § 3B1.1 provides for a three-level enhancement if the defendant was a manager or supervisor and the crime involved five or more participants or was otherwise extensive. *See* U.S.S.G. § 3B1.1(b). Courts consider several factors when determining whether a defendant was a manager or supervisor, including his decision-making authority, the nature of his participation in the offense, recruitment of accomplices, his claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the offense, and the degree of control and authority exercised over others. *See id.* at cmt. n.4. The task force agent's testimony sufficiently showed that Mr. Nunez-Cebrero directed at least ten participants

to distribute and transport specific amounts of heroin and money on his behalf, never received orders from anyone, set the price of the heroin, and gave orders to at least ten people. This evidence was sufficient to show that Mr. Nunez-Cebrero's role in the conspiracy met the requirements of § 3B1.1(b). *See, e.g., United States v. Sosa*, 777 F.3d 1279 (11th Cir. 2015) (finding the application of a § 3B1.1(b) managerial role enhancement was not clearly erroneous where the defendant for healthcare fraud maintained some control over the business's finances, was entitled to a share of the proceeds, participated in negotiations, and wrote checks to compensate co-conspirators).

Mr. Nunez-Cebrero argues that the § 3B1.1(b) managerial role enhancement cannot be supported solely by hearsay testimony, and cites to *United States v. Glinton*, 154 F.3d 1245 (11th Cir. 1998). But the task force agent's relevant testimony was much more detailed than the double-hearsay at issue in *Glinton*, and Mr. Nunez-Cebrero did not object to this testimony at his sentencing hearing. Importantly, he also has not argued that the testimony was materially false or unreliable. It is the defendant's burden to show that hearsay evidence is materially false or unreliable and Mr. Nunez-Cebrero has not offered any reason why the task force agent's testimony could not be believed. *See Hall*, 965 F.3d at 1294 ("The 2002 case file and the depositions of [witness and victim] contain more than sufficient 'indicia of reliability' to be considered in sentencing, and Hall had an opportunity to refute that evidence but he didn't.").

## B

Mr. Nunez-Cebrero also contends that drug distribution was not a primary use of his residence, and that the task force agent's testimony merely showed that drug distribution occurred there. As relevant here, § 2D1.1(b)(12) provides for a two-level enhancement if a defendant maintained a premises to manufacture or distribute drugs. *See* U.S.S.G. § 2D1.1(b)(12).  Manufacturing or distributing a controlled substance need not be the sole purpose for which the residence was maintained, but must be a primary or principal, rather than incidental or collateral, use. *See id.* cmt. n.17. Courts consider how frequently the premises were used for manufacturing or distributing drugs and for lawful purposes. *See id.*

The task force agent testified that multiple people delivered kilograms of heroin from Chicago to the Kissimmee residence, that Ms. Garcia-Cosme went to and from the Kissimmee residence when selling heroin to the CS, and that the participants used the residence to distribute, package, and store heroin and keep the related proceeds.  Although there was evidence to show that the premises was also used to operate a horse business and house Mr. Nunez-Cebrero's family, the task force agent testified that the Kissimmee residence was the "hub" of the organization's drug activity in Florida.  Under the totality of the circumstances, we cannot say the enhancement was not supported by substantial evidence. *See United States v. George*, 872 F.3d 1197, 1206 (11th Cir. 2017) (holding that the district court did not clearly err in applying a § 2D1.1(b)(12) enhancement where drugs had been delivered

20-14255              Opinion of the Court                    9

directly to the defendant's apartment, at least one drug sale took place there, and it stored packing equipment, scales, heat-sealing machines, and firearms).  Therefore, despite the Kissimmee residence's other legitimate uses, the court did not clearly err by concluding that heroin distribution was one of the property's primary purposes.  *See* U.S.S.G. § 2D1.1(b)(12) cmt. n.17.

## IV

The § 3B1.1(b) and § 2D1.1(b)(12) enhancements were supported by substantial evidence and the district court did not clearly err in imposing them.

**AFFIRMED.**