[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13163
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-00283-CAP-ECS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHESTER EUGENE WEST,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 23, 2014)

Before TJOFLAT, HULL and JORDAN, Circuit Judges.

PER CURIAM:

After pleading guilty, Chester West appeals his total 188-month sentence for four counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g); three counts of possessing, selling, or disposing of a stolen firearm, in violation of § 922(j); three counts of distributing cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and three counts of distributing less than 50 kilograms of marijuana, in violation of § 841(a)(1) and (b)(1)(D). West's plea came after law enforcement conducted a six-month undercover operation, in which officers purchased illegal drugs and guns from West on several occasions. On appeal, West asserts that: (1) the district court erroneously applied sentencing enhancements under U.S.S.G. § 2K2.1(b)(5), for defendants who engage in the trafficking of firearms, and § 2K2.1(b)(6)(B), for defendants who use or possess a firearm in connection with another felony; and (2) his 188-month sentence is substantively unreasonable. After review, we affirm.

## I.  FIREARM TRAFFICKING INCREASE

West argues that the district court erroneously applied the trafficking increase under § 2K2.1(b)(5).[1] For firearm-possession offenders like West, the guidelines provide for a four-level increase in the offense level if the defendant "engaged in the trafficking of firearms." U.S.S.G. § 2K2.1(b)(5). For our purposes, the four-level increase applies if the defendant: (1) intentionally

---

[1]We review the district court's findings of fact for clear error and the application of the guidelines to those facts de novo. United States v. Elliot, 732 F.3d 1307, 1310 (11th Cir. 2013).

2

transferred "two or more firearms to another individual"; and (2) "had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual . . . who intended to use or dispose of the firearm unlawfully." Id. § 2K2.1, cmt. n.13(A)(i), (ii)(II).

Here, the district court did not err in applying the trafficking increase. Based on the undisputed facts in the presentence investigation report, the testimony of the undercover officers, and video recordings of the transactions: (1) West sold a total of seven guns to the undercover officers over several transactions; (2) the undercover officers told West that they intended to re-sell the guns "up north" in the New York area at double the price they paid West; (3) one of the undercover officers later told West that he made $800 selling a 9mm pistol that he had purchased from West for $275; (4) the undercover officers sought and purchased guns, such as assault rifles and handguns, designed for use on humans, not for hunting; (5) one undercover officer asked West about the serial numbers on the guns, and, when West indicated the guns were stolen, the officer told West that the officer would have to "do some work" to the guns, meaning he would have to obliterate the serial numbers; and (6) West was careful not to handle the guns with his bare hands and wiped the guns off before giving them to the undercover officers. This evidence supports the district court's finding by a preponderance of the evidence that West sold "two or more" guns to the undercover officers and that

3

West "had reason to believe" that the undercover officers would take the guns to the New York area and resell them to individuals who would dispose of or use them illegally.

West argues that the undercover officer's statement about having to "do some work" on the guns was ambiguous and could mean something other than obliterating the serial numbers. However, the undercover officer's comment came right after he asked West about serial numbers and West responded that the guns were "hot," or stolen. Furthermore, at the sentencing hearing, the undercover officer testified that West appeared to understand that the undercover officer meant he would need to obliterate the serial numbers so law enforcement could not discover that the guns had been reported stolen. Given the context of the undercover officer's statement and his hearing testimony, the district court did not commit clear error in concluding that West believed that the undercover officer intended to obliterate the serial numbers. See United States v. Ndiaye, 434 F.3d 1270, 1305 (11th Cir. 2006) (explaining that "the district court's choice between permissible views [of the evidence] cannot be clear error").

## II. FIREARM "IN CONNECTION WITH" INCREASE

West argues that the district court committed clear error in finding that the guns involved in his firearm-related offenses facilitated his drug-related offenses

4

and thus erred in applying the "in connection with" sentencing increase under § 2K2.1(b)(6)(B).

Under § 2K2.2(b)(6)(B), a defendant's offense level is increased by four levels if he "[u]sed or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B) (emphasis added). The four-level "in connection with" increase applies if the gun "facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1, cmt. n.14(A) (emphasis added).

"[I]n the case of a drug trafficking offense in which a firearm is found in close proximity to drugs," the § 2K2.1(b)(6)(B) increase "is warranted because the presence of the firearm has the potential of facilitating another felony offense." Id. § 2K2.1, cmt. n.14(B); see United States v. Carillo-Ayala, 713 F.3d 82, 88, 92 (11th Cir. 2013) (explaining that under Application Note 14 to § 2K2.1 and our precedent interpreting the "in connection with" phrase, "[a] firearm found in close proximity to drugs or drug-related items simply 'has'–without any requirement for additional evidence–the potential to facilitate the drug offense").

Here, the record established that during two of the firearm transactions with the undercover officers, West had both a gun and drugs on his person. Further, as

the district court concluded, West's possession and sale of the guns incentivized West's drug dealing. Specifically, West, believing that the undercover officers were both gun dealers and drug dealers, twice sold the officers drugs and guns together in the same transaction. On multiple occasions, West negotiated gun and drug deals together in the same conversation or negotiated gun sales during drug transactions or vice versa. The fact that West handed over one of the guns before handing over the drugs does not show that the two transactions were not in connection with each other.

West argues that one of the guns was unloaded. Neither this Court's precedent nor the guidelines require the gun to be loaded, and, in fact, the increase applies even where the defendant possessed only ammunition and no gun with which to fire it. See U.S.S.G. § 2K2.1(b)(6)(B); United States v. Rhind, 289 F.3d 690, 695 (11th Cir. 2002) ("We know of no requirement that the firearms be loaded or operable to meet the 'in connection with' requirement.").

In any event, West does not dispute that, on one occasion, he carried a loaded gun and drugs and that, on the other occasion, when he carried an unloaded gun and drugs, he also carried a magazine for the gun. Given the record facts, the district court did not clearly err in finding that West possessed the guns "in connection with" his drug trafficking offenses and properly applied § 2K2.2(b)(6)'s four-level increase.

6

## III.  SUBSTANTIVE REASONABLENESS

We review the reasonableness of a sentence for an abuse of discretion using a two-step process.  United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).  We look first at whether the district court committed any significant procedural error and then at whether, in light of the totality of the circumstances, the sentence is substantively unreasonable under the 18 U.S.C. § 3553(a) factors.[2]  Id.  We ordinarily expect a sentence imposed within the advisory guidelines range to be reasonable.  United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).  The defendant bears the burden to show his sentence is unreasonable in light of the record and the § 3553(a) factors.[3]  United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006).

West has not met his burden to show his sentence is substantively unreasonable.  West's 188-month sentence is at the low end of the advisory guidelines range of 188 to 235 months and almost five years below his highest statutory maximum of twenty years under 21 U.S.C. § 841(b)(1)(C) for his three

---

[2]Except for the two offense-level calculations addressed above, West does not raise any other procedural errors in his sentence.

[3]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

cocaine trafficking offenses, both indications the sentence is reasonable. See Hunt, 526 F.3d at 746; United States v. McKinley, 732 F.3d 1291, 1299 (11th Cir. 2013). Moreover, West pled guilty to 13 counts involving serious charges of dealing in drugs and stolen guns and faced a possible 145-year prison term if his statutory maximum sentences were run consecutively.

The district court stated that it based West's 188-month sentence primarily on West's extensive criminal history, which showed that West would continue to engage in illegal activity unless incarcerated. Excluding the instant offenses, West's criminal history included nine drug- or property-related offenses since 2003. West's probation was revoked numerous times, and he was on probation for four prior convictions when he committed the instant offenses. Under the circumstances, we cannot say the district court abused its discretion when it concluded that a 188-month sentence, at the bottom of the advisory guidelines range, was necessary to provide just punishment, promote respect for the law, deter West and others from future criminal conduct, and protect the public from West's future crimes.

West contends that the district court should have varied downward due to the undercover officers' sentencing factor manipulation. West claims that he was merely a low-level street dealer and that the undercover officers asked him to obtain guns to increase his sentence.

To show sentencing factor manipulation that will reduce a defendant's sentence, "the government must engage in extraordinary misconduct." United States v. Haile, 685 F.3d 1211, 1223 (11th Cir. 2012) (quotation marks omitted). In Haile, we concluded that the fact that agents initiated conversations about guns did not constitute sentencing factor manipulation because the defendant readily agreed to supply guns and brought them to the transaction. Id.

Here, the record does not show government misconduct, much less extraordinary misconduct. Rather, West readily agreed to sell guns. In fact, even before the undercover operation began, West told a confidential source that he could sell guns as well as drugs and offered to sell two guns to the confidential source. Then, when the confidential source introduced the undercover officers to West, West agreed to sell both drugs and guns in the same transaction and did not express any discomfort with the idea.

Before ever purchasing a gun from West, one of the undercover officers informed West that he trafficked in guns to the northern part of the country to sell them at inflated prices. After this conversation, West agreed to secure guns for the undercover officer and continued to offer guns to him after the first sale. When the undercover officer told West that he had resold the first gun he purchased from West for over twice what he paid for it, West laughed and continued to negotiate the sale of more guns to the undercover officer. Finally, when the undercover

9

officer told West that he needed a larger number of guns to take up north to sell and make a profit, West did not hesitate to provide four guns.  Because West agreed without reservation to engage in the conduct that resulted in his sentencing enhancements, the district court did not abuse its discretion in declining to reduce West's sentence based on alleged sentencing factor manipulation.

**AFFIRMED.**