[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14109
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cr-00400-MHH-HNJ-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,


versus


BRANDON KEITH LECROY,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(July 30, 2020)

Before WILSON, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Brandon Keith LeCroy appeals the revocation of his supervised release and resulting 24-month prison sentence.  At his revocation hearing, the district court admitted into evidence hearsay statements regarding LeCroy's role in a theft.  On appeal, LeCroy argues that because the only evidence of his involvement in the theft were these unreliable statements, the evidence was insufficient for the district court to find that he violated the terms of his supervised release.  LeCroy also contends that the district court erred by failing to make a statement as to the evidence it relied upon and its reasons for revoking his supervised release and that his sentence was procedurally and substantively unreasonable.  After careful consideration, we affirm.

## I.    BACKGROUND

LeCroy pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  He received a prison sentence to be followed by three years of supervised release.  As relevant here, the terms and conditions of LeCroy's supervised release prohibited him from committing a federal, state or local crime; purchasing, possessing, using, distributing, or administering any narcotic or other controlled substance; or associating with any person convicted of a felony without the permission of his probation officer.  The terms and conditions also required LeCroy to follow his probation officer's instructions and participate in a drug and alcohol counseling program.

2

LeCroy began serving the supervised release portion of his sentence in April 2019.  Less than three months later, his probation officer reported that LeCroy had been charged with a state theft offense, and the district court held a status conference.  The court, at the recommendation of the probation officer, chose not to examine the circumstances behind the state theft charge at that time and instead requested a mental health evaluation for LeCroy.

In September 2019, LeCroy's probation officer petitioned the court for revocation of LeCroy's supervised release, alleging that LeCroy had committed five violations of the terms of his supervised release.  The probation officer alleged the following violations:  (1) LeCroy was arrested for theft of property, in violation of Alabama Code § 13A-8-3, a class B felony; (2) he tested positive for methamphetamine and later admitted to using methamphetamine; (3) after he was identified as the suspect in a stabbing, his probation officer ordered him to report to the Fyffe Police Department to meet with investigators within 45 minutes, yet LeCroy did not arrive at the police department until the next day; and (4) officers from the Fyffe Police Department performed a traffic stop of LeCroy's car and determined that one of the car's passengers was a known convicted felon.

The district court held a revocation hearing on the petition.  LeCroy admitted to violating conditions of his supervised release by using controlled substances (Violation (2)), failing to follow his probation officer's instructions (Violation (3)),

3

and associating with a known convicted felon who, he explained, was his coworker (Violation (4)).  The government presented evidence to establish that LeCroy had also violated his supervised release conditions by committing a theft offense (Violation (1)).[1]

The government called Chris McIllwain, a detective with the Scottsboro Police Department, who testified to the following.  McIllwain was investigating the theft of an all-terrain vehicle ("ATV") that had been reported stolen.  A patrol officer informed McIllwain that he had stopped a man riding a dirt bike with the last name LeCroy in the area where the ATV had been stolen.  The investigation led McIllwain to LeCroy's home address, where he discovered a trail in the woods behind LeCroy's house that led to the stolen ATV.  The ATV had no key in it but had crossed wires, a condition which, according to McIllwain, was consistent with the vehicle having been hotwired.

After the ATV was found in the woods behind LeCroy's house, LeCroy was asked to come to the police station.  When he arrived, he was accompanied by his 13 year-old stepson, C.W.  LeCroy admitted that the address where the ATV had been discovered was his house but stated that he had never seen the ATV and was

---

[1] The government also attempted to establish that LeCroy had committed an assault (the stabbing referenced in Violation (3)); however, the district court found that the government had failed to prove that LeCroy committed the assault.  The district court's finding is not at issue in this appeal, so we do not discuss it further.

unaware of its presence behind the house. C.W. was also interviewed. C.W. was not considered a suspect because McIllwain did not think at his age he would know how to hotwire a vehicle. C.W.'s interview was conducted without a parent present and with multiple officers in the room. According to the interview report, C.W. stated that he and a friend, S.J., were riding dirt bikes when they discovered the ATV in the woods. The two attempted to find its owner but were unsuccessful. The ATV's tires were flat when they found it. After returning home, C.W. told LeCroy about the ATV and then brought LeCroy and his mother to the location of the ATV. LeCroy filled the ATV's tires with air, hotwired it, and drove it back to his house, where he hid it in the wooded area behind the house.

S.J. had also told his mother, who informed McIllwain, that he and C.W. discovered the stolen ATV in the woods with flat rear tires and no owner in sight.

At the close of the evidence, LeCroy argued that C.W.'s statements were problematic because he was interviewed by police officers who knew that C.W. could have incriminated himself, he did in fact incriminate himself, and he was interviewed without a parent present. LeCroy argued that these facts raised a question about the credibility of the statements. LeCroy did not object that McIllwain's testimony about what C.W. said in the interview was hearsay. The district court rejected LeCroy's arguments. It found that the government had proven by a preponderance of the evidence that LeCroy had committed "a federal,

5

state, or local crime with respect to the ATV incident." Doc. 53 at 89.[2]  The court

then found that LeCroy had violated this and other conditions of his supervised

release.

In sentencing LeCroy, the district court noted that the ATV theft constituted

a Grade B violation of the terms of supervised release which, when combined with

LeCroy's criminal history category of VI and statutory maximum sentence of 24

months, resulted in a guideline revocation range of 21 to 24 months'

imprisonment.  The court sentenced LeCroy to 21 months' imprisonment followed

by three months of supervised release.  The court explained that it believed the

sentence was appropriate taking into consideration the guideline computations and

the 18 U.S.C. § 3553(a) factors.  The court also stated that the sentence reflected

the nature and circumstances of the violations before the court, as well as LeCroy's

significant criminal history.  LeCroy requested that the court instead sentence him

to 24 months' imprisonment without a supervised release term.  The court

complied and revised its sentence to 24 months' imprisonment.  LeCroy made no

relevant objections.

LeCroy now appeals.

---

[2] Citations in the form "Doc. #" refer to district court docket entries.

6

## II.    ANALYSIS

LeCroy raises three arguments on appeal.  First, he contends that the government presented insufficient evidence to support the district court's finding that he stole the ATV.  Second, he argues that the district court erred in failing to make a statement identifying the evidence it relied upon and its reasons for revoking his supervised release.  Third, he asserts that his sentence was procedurally and substantively unreasonable.  We consider each argument in turn.

### A.    The District Court Did Not Clearly Err When It Found that LeCroy Had Committed a Theft Offense.

LeCroy first argues that the district court erred in finding that he had violated the terms of his supervised release by committing a theft offense because the government failed to prove by a preponderance of the evidence that he committed the ATV theft.  He argues that the only evidence supporting that he stole the ATV came from C.W.'s statements, and those statements were insufficient to carry the government's burden of proof because they were unreliable hearsay.  LeCroy contends that the statements were unreliable because: (1) C.W. was a minor who was interviewed without a parent present; (2) C.W. was given no *Miranda*[3] warnings; (3) C.W. could have incriminated, and did in fact

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

incriminate, himself; and (4) the statements were offered at the revocation hearing through double hearsay.[4]

A district court may revoke a term of supervised release if it finds by a preponderance of the evidence that the defendant violated a condition of his supervised release. 18 U.S.C. § 3583(e)(3). We review a district court's revocation of supervised release for an abuse of discretion. *United States v. Copeland*, 20 F.3d 412, 413 (11th Cir. 1994). In reviewing a revocation proceeding, we are bound by the district court's findings of fact unless they are clearly erroneous. *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993).

First, LeCroy asserts that C.W.'s statements were the only evidence supporting the district court's finding that he committed the ATV theft. The district court, however, heard other testimony from McIllwain, beyond C.W.'s statements, connecting LeCroy to the theft. McIllwain's testimony also indicated that LeCroy had been riding a dirt bike in the area where the ATV was stolen, the ATV was found in the woods behind LeCroy's house by following a trail that led from the house to the ATV, and S.J. had told his mother that he and C.W had discovered the ATV in the woods, without an owner, and with flat tires. Although

---

[4] Although LeCroy argues in his initial brief that the critical evidence against him—McIllwain's testimony about C.W.'s statements—was "double hearsay" and "bore no indicia of reliability," Appellant's Br. at 1516, he clarifies in his reply brief that he is not asserting a challenge to the admission of the evidence; rather, he is arguing only that the evidence was insufficient to prove that he committed the theft, *see* Reply Br. at 23.

LeCroy suggests that C.W. stole the ATV, McIllwain stated that the fact that the ATV was hotwired suggested that it was not stolen by C.W., who was 13 years old and unlikely to know how to hotwire an ATV.  It was within the district court's discretion as the factfinder to credit McIllwain's testimony.  *Jeffries v. United States*, 748 F.3d 1310, 1313 (11th Cir. 2014) ("Because credibility determinations are the province of the factfinder, we give them substantial deference." (internal citation omitted)).

Second, LeCroy argues that C.W.'s statements were unreliable and therefore insufficient to establish that he stole the ATV.  We are unpersuaded.  Even though LeCroy asserts, and McIllwain confirmed, that C.W. was questioned by multiple police officers without his parents present and without the benefit of *Miranda* warnings, LeCroy points to no evidence showing that C.W.'s statements actually were unreliable because of these circumstances.  Similarly, LeCroy offers no evidence demonstrating that C.W.'s statements were false.  In fact, the reliability of C.W.'s statements are supported by the record, which corroborates his account. *See United States v. Docampo*, 573 F.3d 1091, 1098 (11th Cir. 2009) (explaining that where hearsay statements were corroborated by other evidence in the record, the hearsay evidence was reliable).  C.W. informed officers that he observed LeCroy hotwire the ATV and take it back to his house before hiding it in the woods.  This account is consistent with McIllwain's testimony that the ATV was

9

discovered hidden behind LeCroy's house with crossed wires. Because LeCroy offers no evidence that C.W.'s account was false and C.W.'s statements were supported by other evidence in the record, we conclude that the district court did not clearly err in finding that LeCroy committed theft of property and thus violated one of his supervised release conditions. *See Copeland*, 20 F.3d at 413; 18 U.S.C. § 3583(e)(3).

**B.      The District Court Did Not Err When It Stated Its Finding that LeCroy Had Violated His Supervised Release Conditions by Committing a Theft.**

LeCroy also argues that the district court erred by failing to make a statement identifying the evidence it relied upon in finding that LeCroy violated the conditions of his supervised release, as is required by *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). The district court's statements, LeCroy contends, were merely conclusory and thus insufficient to satisfy *Morrissey*. The government disagrees and argues that the district court sufficiently explained its reasoning, which was supported by the record.

Defendants in revocation proceedings are entitled to due process rights, though not the full set of trial rights. *Morrissey*, 408 U.S. at 482. Relevant here, principles of due process require that a defendant facing revocation of his supervised release receive a written statement by the factfinder as to the evidence relied on and the reasons for revocation. *See id.* at 48889.

10

Oral findings can satisfy *Morrissey*'s requirements when those findings "create a record sufficiently complete to advise the parties and the reviewing court of the reasons for the revocation of supervised release and the evidence the decision maker relied upon." *Copeland*, 20 F.3d at 414. Moreover, "general conclusory reasons . . . do not meet [the] due process requirement that the revoking judge state the factual findings and the reasons relied upon for revocation." *United States v. Lacey*, 648 F.2d 441, 445 (5th Cir. 1981). When a court has provided only a conclusory statement about a supervised release violation, *Lacey* can nevertheless be satisfied if there was only one incident at issue and "the evidence and the reasons for revoking supervised release were clear." *United States v. Johnson*, 678 F.3d 1210, 1211 (11th Cir. 2012).

As an initial matter, the parties disagree as to the appropriate standard of review. LeCroy, citing Federal Rule of Criminal Procedure 51(b),[5] argues that although he did not object to the district court's statement, we should review his claim *de novo* rather than for plain error because the district court gave him no opportunity to object. But we need not decide the correct standard here because LeCroy's claim fails under either standard.

---

[5] Rule 51(b) provides that "[i]f a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." Fed. R. Crim. P. 51(b).

11

We agree with LeCroy that the district court's statement was conclusory. In announcing its finding, the district court stated only that "the United States ha[d] prove[n] by a preponderance of the evidence the charge from June 25, 2019, that Mr. LeCroy committed a federal, state, or local crime with respect to the ATV incident." Doc. 53 at 89. Despite the conclusory nature of the district court's statement, we nonetheless conclude that it satisfied the requirements under *Morrisey* and *Lacey* because, here, as in *Johnson*, "the evidence and the reasons for revoking supervised release were clear." *See Johnson*, 678 F.3d at 1211.

Although the district court evaluated two potential violations—LeCroy admitted to all violations of his supervised release conditions except the allegations that he committed a theft and an assault—the only evidence concerning the theft, which, unlike the alleged assault, ultimately served as a basis for the revocation, came from McIllwain's testimony. The record demonstrates that the court listened closely to that testimony, clarifying parts of McIllwain's testimony by asking questions, and considered the parties' arguments regarding the theft, interrupting the government's argument to clarify with LeCroy what his argument was. On its own, the district court's statement appears to be conclusory; however, when considered in light of the evidence presented as to the theft, the record was "sufficiently complete to advise the parties and the reviewing court of the reasons

12

for the revocation of supervised release and the evidence the decision maker relied upon." *See Copeland*, 20 F.3d at 414.

Accordingly, we reject LeCroy's argument that the district court erred in failing to make a statement as to the evidence it relied upon and its reasons for revoking LeCroy's supervised release based on the court's finding that LeCroy committed a theft offense and the record evidence supporting that finding.

## C.    The District Court Did Not Impose an Unreasonable Sentence.

LeCroy also asserts that his sentence is both procedurally and substantively unreasonable. As to procedural reasonableness, LeCroy contends that the district court failed to properly calculate his guideline range because it erred in finding that LeCroy had committed a new offense—the ATV theft. As to substantive reasonableness, LeCroy argues the district court erred because his circumstances had not materially changed from the time of his status conference and the court did not provide time for its prior modifications to the terms and conditions of his supervised release, specifically its mental health evaluation, to take effect before imposing its sentence.[6]

---

[6] LeCroy also argued that the court's sentence was greater than necessary considering the statutory sentencing factors. LeCroy asserted this argument only in one line of his brief. Because a passing reference in a brief without substantive legal argument is insufficient to preserve an issue, LeCroy has abandoned this argument. *United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

13

Because we concluded that the district court did not err in finding that LeCroy committed the ATV theft, we likewise conclude that the district court did not err when it calculated his guideline range based on the inclusion of the ATV theft. We thus only address LeCroy's argument that his sentence was substantively unreasonable.

We review the reasonableness of a sentence under a deferential abuse of discretion standard, considering the totality of the circumstances and the sentencing factors set forth in § 3553(a). *Gall v. United States*, 552 U.S. 38, 41 (2007). Under § 3553(a), the district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2)—the need to reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)-(7).

14

Although we do not automatically presume a within-guidelines sentence to be reasonable, ordinarily we expect it to be. *United States v. Asante*, 782 F.3d 639, 648 (11th Cir. 2015). That a sentence falls at the low end of the guideline range and well below the statutory maximum are two indications of reasonableness. *See United States v. Cubero*, 754 F.3d 888, 898 (11th Cir. 2014).

The party challenging a sentence bears the burden of proving the sentence is unreasonable. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010). A district court imposes a substantively unreasonable sentence when it fails to afford consideration to relevant factors that were due significant weight, gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment in considering the proper factors. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc); *see United States v. Crisp*, 454 F.3d 1285, 1292 (11th Cir. 2006) (explaining that a sentencing court's "single-minded[ ]" focus on one factor to the detriment of other relevant sentencing factors "is a symptom of an unreasonable sentence" (internal quotation marks omitted)).

Although generally the weight to be accorded any § 3553(a) factor is a matter committed to the sound discretion of the district court, *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008), a district court commits a clear error of judgment when it "considers the proper factors but balances them unreasonably" and imposes a sentence that "does not achieve the purposes of

15

sentencing as stated in § 3553(a)," *Irey*, 612 F.3d at 1189 (internal quotation marks omitted). We will vacate a sentence if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1190 (internal quotation marks omitted).

The guideline range for a post-revocation sentence is based on the classification of the conduct that resulted in the revocation and the criminal history category applicable during the defendant's original sentencing. *See* U.S.S.G. §§ 7B1.1(a), 7B1.4(a); *United States v. Campbell*, 473 F.3d 1345, 134849 (11th Cir. 2007). A Grade B violation for a defendant in criminal history category VI results in a guideline range of 21 to 27 months' imprisonment. U.S.S.G. § 7B1.4(a). Because the statutory maximum sentence was 24 months' imprisonment based on LeCroy's original offense, the resulting guideline range was 21 to 24 months. *See* 18 U.S.C. § 3583(e)(3).

LeCroy contends that there were no material changes between his initial status conference, at which the district court ordered a mental health evaluation, and his revocation hearing; thus, he argues, the sentence the district court imposed was substantively unreasonable in light of his need for drug abuse treatment. We disagree with LeCroy that there were no material changes between his status

16

conference and revocation hearing and that the district court did not adequately consider his need for drug treatment. LeCroy admitted to committing several violations of his supervised release conditions, in addition to the ATV theft, at his revocation hearing. Some of these violations, including that he used controlled substances, failed to follow the instructions of his probation officer, and associated with a known convicted felon, occurred after his initial status conference.

Moreover, the district court's decision to sentence LeCroy despite requesting at his status conference a mental health evaluation for him was not an abuse of discretion. The court heard arguments from both LeCroy and the government regarding the § 3553(a) factors, including mitigating factors like LeCroy's drug addiction and mental health issues and aggravating factors like LeCroy's significant criminal history and disrespect for the law. The court's choice to place more weight on the nature and circumstances of the offenses and LeCroy's significant criminal history was within its sound discretion. *See Williams*, 526 F.3d at 1322. Further, the sentence imposed was within the guideline range, which we ordinarily expect to be reasonable, s*ee Asante*, 782 F.3d at 648. Also, the district court's initial sentence was for 21 months, at the bottom of the guideline range, another indicator of reasonableness, *Cubero*, 754 F.3d at 898. The district court imposed a sentence at the statutory maximum, 24 months, only upon LeCroy's request that the court do so. Accordingly, we cannot conclude that the

district court abused its discretion because the 24-month prison sentence was procedurally and substantively reasonable.

**AFFIRMED.**